THIS ORDER IS APPROVED.

Dated: December 6, 2016

Scott H. Gan, Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| In re: | Chapter 13 |
|---|---|
| DIANA R. SHAFFER, | Case No. 2:16-bk-10935-SHG |
| Debtor. | **MEMORANDA DECISION RE: MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER §362(a)** |

On September 22, 2016, Diana R. Shaffer (the "Debtor") filed a petition pursuant to chapter 13 of the Bankruptcy Code[1]. On October 7, 2016, a creditor in the case, Procaccianti AZ II LP ("Procaccianti") filed a *Motion to Confirm the Inapplicability of Automatic Stay or in the Alternative to Lift the Automatic Stay* (the "Motion")[2]. On October 21, 2016 Debtor filed a Response to the Motion[3]. On November 8, 2016 Procaccianti filed a Reply in support of the Motion[4]. On November 15, 2016 a hearing was held and arguments were presented by both parties with respect the Motion. The Court took the matter under submission and now rules in

---

[1] On October 7, 2016, Procaccianti filed a motion to dismiss the Debtor's bankruptcy case because the Debtor's liquidated, non-contingent, unsecured debts exceeded the debt limit set forth in 11 U.S.C. §109(e) and the bankruptcy case was not filed in good faith (DE 16). The Debtor immediately moved to convert to chapter 11 (DE 24). Procaccianti opposes Debtor's conversion to chapter 11 (DE 28). An evidentiary hearing on these motions is set for December 8, 2016 (DE 41).

[2] DE 15

[3] DE 26

[4] DE 33

Case 2:16-bk-10935-SHG   Doc 52   Filed 12/06/16   Entered 12/07/16 09:38:33   Desc
Main Document   Page 1 of 10

favor of Procaccianti granting relief from the automatic stay for the reasons discussed below.

During the oral argument on November 15, 2016, counsel for the Debtor and Procaccianti were asked whether the facts relevant to the determination of the Motion were disputed. Each responded that the historical facts and procedural history were not disputed. The facts and history set out below were taken from the exhibits attached to the parties' pleadings.

**HISTORICAL BACKGROUND AND DEBTOR'S PURCHASE OF UNIT NO. 17**

In April 1970, W.J. Small and Hazel M. Small leased 20 acres of land situated in Maricopa County to Linscott Hotel Corporation ("Linscott") for a period of 99 years ("Ground Lease")[5]. Linscott subjected and submitted 8 of the 20 acres to a condominium arrangement by recording a Declaration of Horizontal Property ("Declaration"), and the condominium arrangement is sometimes referred to as "Hilton Casitas"[6]. Linscott constructed, sold and conveyed dwelling units ("Units") in the 29 tracts to individual buyers.

Dawn Borger ("Borger") purchased one of the Units from Linscott on or about September 1973 and obtained a deed for the same[7]. In a separate transaction from the sale and purchase of the Unit, in September 1973, Linscott subleased to Borger the tract of underlying land referred to as "Casita No. 17"[8]. In September 1999, Scottsdale Resort & Spa Limited Partnership, as successor in interest to Linscott, and Borger amended the sublease in regards to rental terms[9]. In March 2005, Debtor purchased from Borger Unit 17 pursuant to a Purchase Agreement and obtained a Deed for same[10]. At the same time, Borger also assigned her sublease to the Debtor ("Ground Sublease").

Evidently, at a meeting held on January 12, 2006, the Hilton Casitas Council of Co-Owners (currently called the Scottsdale Hilton Casitas Homeowners Association) allegedly approved, in accordance with its by-laws, the terms of the negotiated rent allocation that, among other things, provides that the net annual rental payable by Sublessor (in its capacity as Lessee

---

[5] DE 26, Ex 3
[6] Id., Ex 4
[7] Id., Ex 5
[8] Id., Ex 6
[9] DE 15, Ex A, p. 38-44
[10] DE 26, Ex 1 and 2

under the (Ground Lease) shall, for the period October l, 2003 through September 30,2036, when the rental shall again be adjusted in connection with the redetermination of rental due from Sublessor under the Ground Lease[11]. The terms of the Association's agreement was memorialized in the Second Amendment of Sublease Casita No. 17, dated January 13, 2006 by and between Scottsdale Resort & Spa Partners Limited Partnership ("Sublessor")(Procaccianti's predecessor-in-interest) and Debtor ("Sublessee")[12]. The Second Amendment of Sublease provided, *inter alia,* various methods for Debtor's payment of: (1) increased monthly rent of $708.50 from February 1, 2006 through September 1, 2036; (2) Sublessee's "Aggregate Rental Shortfall Amount" of $10,685.36 for the period from October 1, 2003 through January 31, 2006; and (3) Sublessee's share of Expert Fees of $4055.60

## LITIGATION OVER THE SECOND AMNEDED SUBLEASE

Apparently the Debtor refused to sign the Second Amended Sublease (Id.). Instead, in 2006, she and three other unit owners, filed an action in Maricopa County Superior Court in CV2006-002866 seeking a determination that the then existing Homeowners Association ("HOA") did not have the appropriate votes to authorize negotiating the future lease obligation for the respective unit owners. The 2006 action ultimately resulted in a ruling and judgment dated August 19, 2011, in favor of the Debtor and the other unit owners that the HOA did not have authority to negotiate the Second Amended Subleases, specifically the increased rental payments[13].

Procaccianti evidently continued to demand the Debtor pay the past due and increased rent the other 25 Unit owners were paying under the terms of their Second Amended Subleases signed in 2006. So, in 2012, the Debtor and three other Unit owners brought an action against Procaccianti among others in Maricopa County Superior Court, No. CV2012-051066, to resolve the dispute over the rent required to be paid for the Ground Sublease.

Procaccianti filed counterclaims in that action asserting claims for breach of contract, unjust enrichment, breach of covenant of good faith and fair dealing and seeking a judicial

---

[11] DE 15, Ex A, p. 45-53
[12] Id.
[13] DE 26, Ex 7

declaration whether it could enforce the increased rent set forth in the Second Amended Subleases and to establish the amounts owed by each of the "objecting" Unit owners[14]. On June 9, 2016, the State Court entered a money judgment against the Debtor in favor of Procaccianti in the amount of $114,589.70 for sums owed under the Ground Sublease and $459,000 in attorney's fees and $5,108.56 in costs ("2016 Judgment")[15].

## EVICTION AND BANKRUPTCY

On June 30, 2016 Procaccianti sent a letter notifying the Debtor that she was in default under the terms of the Ground Sublease by failing to pay monthly rent "on multiple and continuing occasions" and demanding the Debtor pay the amount of $118,132.20 within 30 days or face termination of the sublease lease and subsequent eviction[16].

On August 16, 2016 Procaccianti filed a forcible entry and detainer action against Debtor in the Maricopa County Superior Court, CV2016-012290 seeking to evict the Debtor[17]. An evidentiary hearing in the forcible entry and detainer action was set to commence in the superior court at 9:00 a.m. on September 23, 2016[18]. On September 22, 2016 at about 4:00 p.m., the afternoon before the eviction trial was scheduled to commence, the Debtor filed the instant bankruptcy proceeding under chapter 13 of the Bankruptcy Code.

## PROCACCIANTI SEEKS RELIEF FROM THE STAY

On October 7, 2016, Procaccianti filed the Motion seeking a determination that the automatic stay is inapplicable based on the alleged prepetition termination of the lease, or alternatively seeking "lift" of the automatic stay to permit completion of the eviction action still pending in the Maricopa County Superior Court. Procaccianti asserts: (1) the Debtor's rights under the Ground Lease and in Unit 17 terminated prepetition; it is not property of the estate; and therefore, the stay is inapplicable to those interests; (2) "cause" for relief from the stay under §362(d)(1) has been established because the Debtor has no rights in the Ground Lease;

---

[14] DE 26, Ex 9
[15] Id., Ex 10
[16] DE 26, Ex 11, p. 214-215
[17] DE 26, p. 5, l. 17-18
[18] Id., Ex 12

she cannot assume the Ground Lease because it terminated according to its terms prepetition; and the Debtor has no legal basis to remain in the property; (3) the Debtor admittedly has no equity in Unit 17 and it is not necessary for an effective reorganization since she did not own it on the filing date; and (4) stay relief may be granted if any of the standards for relief under §362(d) have been satisfied.

Debtor opposes the Motion and asserts: (1) she cannot be legally evicted her from the real property improvements on leased land based on the prior state court judgment in favor of Procaccianti, even if the lease was properly terminated prepetition; (2) the Debtor has repeatedly tendered monthly rent payments "outside of the scope of the 2016 Judgment", but these payments have been improperly rejected by Procaccianti; (3) cause does not exist to lift the stay; and (4) the ground lease was not properly terminated by Procaccianti prepetition.

This Court need not resolve the Debtor's claims regarding her rights in the Ground Lease, the improvements to Unit 17 or over the land, as well as her claims that Procaccianti is legally precluded from foreclosing on them under state law. It is not necessary to determine here whether the lease was properly terminated by Procaccianti prepetition. Cause for relief from the stay has been established.

## THE LAW

11 U.S.C.A. § 362 provides in pertinent part:

d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if--

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization;

A bankruptcy filing imposes an automatic stay of all litigation against the debtor. 11

U.S.C. § 362(a). A bankruptcy court, however, "shall" lift the automatic stay "for cause." § 362(d)(1). "Cause" has no clear definition and is determined on a case-by-case basis, *In re MacDonald,* 755 F.2d 715, 717 (9th Cir.1985). But, where a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for lifting the stay as to the state court trial. *See In re Castlerock Properties,* 781 F.2d 159, 163 (9th Cir.1986). *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990).

A creditor seeking to proceed post-petition with litigation against the debtor typically must request and obtain relief from the automatic stay. *Id*. Such relief is granted only upon a showing of cause. § 362(d)(1); *In re Conejo Enterprises, Inc.,* 96 F.3d at 351. However, because the Bankruptcy Code does not specify what constitutes cause in this context, bankruptcy courts must determine whether cause exists on a case-by-case basis. *Id*.; *Kronemyer v. Am. Contractors Indemn. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (9th Cir. BAP 2009).

In *In re Kronemyer*, the bankruptcy court considered the factors articulated in *In re Curtis,* 40 B.R. 795, 799–800 (Bankr. D. Utah 1984), for the purpose of determining whether cause existed to lift the stay to permit the creditor to proceed with prepetition litigation against the debtor. *In re Kronemyer*, 405 B.R. at 921. As the *Kronemyer* court stated, "We agree that the Curtis factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." *Id*.

The *Curtis* factors consist of the following twelve nonexclusive factors:

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and

12. The impact of the stay on the parties and the "balance of hurt,"

## ANALYSIS

In weighing the relevant factors whether to grant relief from the stay to permit pending state court litigation to proceed, the bankruptcy court is not required to give equal weight to all factors. The balancing of potential harm to the creditor on the one hand and to the debtor and the bankruptcy estate on the other hand frequently is dispositive. *Green v. Brotman Med. Ctr., Inc. (In re Brotman Med. Ctr., Inc.)*, 2008 WL 8444797, at *6 (Mem. Dec.) (9th Cir. BAP Aug. 15, 2008) ("the bankruptcy court must balance the potential hardship that will be incurred by the party seeking relief if the stay is not lifted against the potential prejudice to the debtor and the bankruptcy estate")

In essence Procaccianti is relief from the stay to resolve whether the Ground Lease was terminated prepetition and whether Debtor's defenses to termination or eviction should prevail in the state court. These parties have been in litigation over the enforcement of the Second Amended Sublease since at least 2012. On October 3, 2016, after the petition was filed, the Debtor filed a notice of appeal from the 2016 Judgment entered against her and in favor of Procaccianti[19]. So, the litigation between these parties in the Arizona state courts continues,

---

[19] DE 26, Ex 15. To the extent that §362 stays an appeal by a debtor when the action or proceeding below was against the debtor, relief from the stay to permit the debtor to pursue her appeal is granted by this order. *Parker v. Bain*, 68 F.3d 1131, 1136 (9th Cir. 1995) ("[S]ection 362 should be read to stay all appeals in proceedings that were *originally brought* against the debtor, regardless of whether the debtor is the appellant

despite the filing of the Debtor's bankruptcy case.

There are no disputed facts that required an evidentiary hearing prior to determination of the Motion. Despite the Debtor's arguments to the contrary, there is no reason for this Court to insert itself in the Ground Lease litigation at this late stage of those proceedings. Particularly, in light of the fact there is a pending state court proceeding that will provide a competent forum for resolution of these questions of state law.

Applying the *Curtis* factors in this case leads to the conclusion that relief from the stay should be granted. The state court will permit Procaccianti and the Debtor to obtain a complete determination of whether the lease was properly terminated and the Debtor's defenses to the lease termination and eviction in the same state court proceeding. The resolution of the eviction action will have not interfere with the bankruptcy case. In fact resolution of the lease termination issues will assist the bankruptcy court in subsequently resolving the Debtor's motion to assume the Ground Lease which was recently filed.

The Maricopa County Superior Court is a specialized tribunal established to hear these kinds of real property disputes. See, *Matter of Williams*, 144 F.3d 544, 550 (7th Cir. 1998) (finding the bankruptcy court did not abuse its discretion in granting relief from the automatic stay to permit completion of an eviction action, in part, because it had no particular expertise under this narrow area of state law and this would not be a particularly efficient use of judicial resources); *In re Blair*, 534 B.R. 787, 792–93 (Bankr. D.N.M. 2015) (citing the *Curtis* factors and concluding the stay should be modified to permit an eviction action to continue, in part, because the state courts are well-versed in this area of law and traditionally exercise jurisdiction over such disputes.)

There is no creditors committee in this case. The case has not yet been converted to chapter 11. The secured creditor holding a first priority lien on the improvements and the Debtor's husband's business that has a second lien on the same property will not be prejudiced by continuing the eviction litigation in the state court. Both should be fully capable of representing their interests in that litigation, if necessary. The interests of judicial economy and the expeditious and economical determination of the pending litigation between the parties

---

or the appellee....")

clearly favors granting relief from the stay.

Finally, the balance of the hurt, the impact of the stay favors granting relief from the stay. The Debtor has not demonstrated why continuing the stay will do anything more than prevent her eviction from Unit 17. The value of the property according to the Debtor's schedules is approximately $320,000. The property is encumbered by a first lien owed approximately $145,000 and a second lien in favor of an entity owned by the Debtor's husband owed approximately $644,000. As a result, the property is over encumbered and there is no equity for the bankruptcy estate. The only reason to litigate the lease termination/eviction matter in the bankruptcy court is to permit the Debtor to continue to reside in the property. There does not appear to be any economic benefit to the estate's creditors even if the Debtor is successful in proving the lease was not properly terminated.

**CONCLUSION**

Procaccianti has established cause under §362(d)(1) for relief from the stay to permit completion of the eviction action pending in state court. Whether the lease was properly terminated as well as Debtor's other defenses to eviction can be litigated in that pending state court proceeding. This grant of stay relief includes the determination by the state court whether Procaccianti may foreclose under state law on the Debtor's asserted interest in the land and improvements comprising Unit 17 as a consequence of the claimed termination of the Ground Lease. Procaccianti is not authorized to take any collection action with respect to the judgment against the Debtor personally without further order of the Court. For the reasons set forth above, Procaccianti's Motion for Relief from the automatic stay is granted. Counsel for Procaccianti is directed to prepare a form of order.

Dated and signed above.

Notice to be sent through the
Bankruptcy Noticing Center "BNC"
to the following:

Diana Shaffer
6333 North Scottsdale Road #17
Scottsdale, AZ 85250
*Debtor*

Mark J. Giunta
LAW OFFICE OF MARK J. GIUNTA
245 W. Roosevelt St., Suite A
PHOENIX, AZ 85003
*Attorney for Debtor*

Corey Hill
HILL, HALL & DeCiancio, PLC
3131 E. Clarendon Ave., Suite 107
Phoenix, AZ 85016
*Attorney for Hilton Casitas Council of Homeowners*

US Trustee
Office of the U.S. Trustee
230 North First Avenue, Ste. 204
Phoenix, AZ 85003

Andrew M. Federhar
Anthony W. Austin
Fennemore Craig, PC
2394 East Camelback Road,
Suite 600 Phoenix, Arizona 85016
*Attorney for Procaccianti AZ II LLP*

James E. Cross
Cross Law Firm, P.L.C.
1850 North Central Avenue, Suite 1150
Phoenix, Arizona 85004
*Attorney for Timothy Shaffer*

Timothy Shaffer
6333 North Scottsdale Road #17
Scottsdale, AZ 85250
*Creditor*